FILED
2015 Jul-21  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **GERRY MACK SASNETTE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 5:14-CV-362-VEH** |
| ) | |
| **CAROLYN W. COLVIN, ACTING** ) | |
| **COMMISSIONER, SOCIAL** ) | |
| **SECURITY ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION

Plaintiff Gerry Mack Sasnette (hereinafter "Mr. Sasnette") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits ("DIB"). Mr. Sasnette timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

Mr. Sasnette was 61 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). (Tr. 105). He graduated from a four-year college

in 1984. (Tr. 142). His past work experience includes employment as a policy director, salesman, recruiter for a health training program, insurance claims examiner, stockbroker, and eligibility worker in health care. (Tr. 18). He claims he became disabled on January 17, 2011, due to his back problems, knee problems, and arthritis. (Tr. 105, 141). His last period of work ended on January 14, 2011. (Tr. 30).

On June 14, 2011, Mr. Sasnette protectively filed a Title II application for a period of disability and DIB. (Tr. 53). On July 27, 2011, the Commissioner initially denied his DIB claim. (Tr. 54). Mr. Sasnette timely filed a written request for a hearing on August 26, 2011. (Tr. 62-63). The ALJ conducted a hearing on the matter on September 12, 2012. (Tr. 11). On November 1, 2012, the ALJ issued her opinion concluding Mr. Sasnette was not disabled and denying him benefits. (Tr. 11-20). Mr. Sasnette timely petitioned the Appeals Council to review the decision on December 11, 2012. (Tr. 6). On January 10, 2014, the Appeals Council issued a denial of review on his claim. (Tr. 1-3).

Mr. Sasnette filed a Complaint with this court on March 2, 2014, seeking review of the Commissioner's determination. (Doc. 1).The Commissioner answered on August 25, 2014. (Doc. 7). Mr. Sasnette filed a supporting brief (Doc. 11) on November 7, 2014, and the Commissioner responded with her own (Doc. 12) on December 8, 2014. With the parties having fully briefed the matter, the court has

2

carefully considered the record and concludes that the decision of the Commissioner is due to be reversed and the case remanded.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal

analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

---

[1]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of June 26, 2014.

4

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Mr. Sasnette met the insured status requirements of the Social Security Act through June 30, 2015. (Tr. 13). The ALJ concluded that he has not engaged in substantial gainful activity throughout the whole period after the onset date of his disability on January 17, 2011. *Id.* Additionally, the ALJ found that Mr.

Sasnette has the following severe impairments: degenerative joint disease, bilateral knees, and degenerative disk disease (20 C.F.R. § 404.1520(c)). (Tr. 14). Moreover, the ALJ found that these impairments, when considered individually or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (Tr. 14).

The ALJ evaluated Mr. Sasnette's residual functional capacity ("RFC") and found that Plaintiff retains:

> the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a).[2] He can frequently climb ramps and stairs, balance, and stoop. He can occasionally crouch. He cannot climb ladders, ropes, scaffolds, kneel or crawl. He should not work at unprotected heights or around dangerous moving unguarded machinery.

(Tr. 14).

The ALJ determined that Mr. Sasnette is capable of performing past relevant work as a policy director (DOT #166.017-010),[3] sedentary in exertional requirements

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[3] The Dictionary of Occupational Titles ("DOT") provides different examples of work activities that fall within the residual functioning capacity for sedentary work. (Washington, D.C.: U.S. Dept. Of Labor, Employment and Training Administration: U.S. G.P.O., 1993). Available online at: http://www.occupationalinfo.org.

and skilled in nature; recruiter health training program (DOT #166.267-010) sedentary in exertional requirements and skilled in nature; insurance claims examiner (DOT #168.267-010), sedentary in exertional requirements and skilled in nature; stockbroker (DOT #162.167-038), sedentary in exertional requirements and skilled in nature; and eligibility worker in health care (DOT #195.267-010), sedentary in exertional requirements and skilled in nature. (Tr. 18). The ALJ concluded that none of the limitations stated in the RFC assessment are inconsistent with his past relevant work except for his sales positions. *Id.* In addition, the ALJ noted that Mr. Sasnette has not been under a disability, as defined in the Social Security Act, from January 17, 2011, through the date of this decision (20 C.F.R. § 404.1520(f)). (Tr. 19). Accordingly, the ALJ concluded that Mr. Sasnette was not disabled as defined by §§ 216(i) and 223(d) of the Social Security Act. (Tr. 20).

## ANALYSIS

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[4] However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mr. Sasnette asserts that the ALJ lacked substantial evidence to support her decision to deny disability benefits and that improper legal standards were applied. (Doc. 11 at 6). In its review, the court agrees and finds that the ALJ's decision was not supported by substantial evidence.

## I.    The ALJ's Conclusion that Mr. Sasnette Was Not Disabled Is Not Supported by Substantial Evidence.

Mr. Sasnette argues he meets the Eleventh Circuit's pain standard, and the ALJ's contrary decision is not supported by the evidence. (Doc. 11 at 6). The court agrees. More specifically, the ALJ's decision that Mr. Sasnette does not meet the pain standard is based on an inadequately substantiated negative credibility finding regarding Mr. Sasnette's subjective pain testimony.

The pain standard "applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This standard requires "evidence of an underlying medical condition and (1) objective medical evidence that confirms the

---

[4]*Strickland* is binding precedent in this Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). A claimant's statements about pain or other symptoms do not alone establish disability. 20 C.F.R. § 404.1529(a) ("[h]owever, statements about [the claimant's] pain or other symptoms will not alone establish that you are disabled"); *accord* 20 C.F.R. § 416.929(a) (same). Rather, "there must be medical signs and laboratory findings which show that [claimants] have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id.* Even if a claimant is able to show medical impairments that could reasonably be expected to produce the alleged symptoms, the Commissioner "must then evaluate the intensity, persistence of [the claimant's] symptoms so that [the Commissioner] can determine how [the claimant's] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1).

The ALJ may reject a plaintiff's complaints of pain if he finds them not credible. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("[a]fter considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). However, if the ALJ discredits a claimant's testimony regarding the severity of his

symptoms, that determination must be supported by substantial evidence. *Id.*; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (explaining that the Commissioner's factual findings must be supported by substantial evidence).

Furthermore, the ALJ may not reject the claimant's statements as to the intensity and persistence "solely because the available objective medical evidence does not substantiate [claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* SSR 96-7p ("[T]he effect the symptoms have on [the claimant's] ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").[5] Instead, the ALJ is bound to consider other evidence, in addition to the objective medical evidence, because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3).

This other evidence includes "any symptom-related functional limitations and restrictions which [the claimant], [the claimant's] treating or non-treating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" *Id.* Relevant factors that may show

---

[5]Although they lack the force of regulations, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *see also McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006), 2006 WL 177576 (citing SSR 96-6p as authoritative, for example).

the effect of the claimant's symptoms on his or her functional abilities include: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's pain; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the pain; and other treatments or measures taken by the claimant, not including medication. *Id.* Using these other evidence factors, the ALJ must show substantial evidence supporting his attempt to discredit the claimant's pain testimony. *Id.*

In applying this standard to the present case, the ALJ ultimately found that Mr. Sasnette's medically determinable impairments could reasonably be expected to cause his alleged symptoms.[6] (Tr. 18). However, the ALJ determined "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.*

Mr. Sasnette contends that "the ALJ's reasoning for failing to discredit [sic] the Plaintiff's testimony of disabling limitations is woefully inadequate." (Doc. 11 at 8).

___

[6]While the ALJ stated this finding explicitly in her opinion, the statement contradicted earlier statements by the ALJ that Mr. Sasnette's medically determinable impairments could not reasonably be expected to cause the alleged symptoms. (Tr. 15, 17-18) (emphasis added). Had the ALJ applied the counter finding to the pain standard, her analysis would not have reached the credibility determination. As a result of the court's determination that the case should be remanded because of the ALJ's inadequate credibility finding, the court does not address whether the ALJ's inconsistent statements constitute reversible error.

11

As explained *infra*, the court finds that the ALJ's credibility determination is not supported by substantial evidence. The ALJ articulated only two factors that substantially support her decision not to fully credit Mr. Sasnette's testimony. The first factor she identified was Mr. Sasnette's seemingly inconsistent positions of receiving unemployment benefits while simultaneously applying for disability benefits. (Tr. 14). The second factor identified by the ALJ is inconsistencies noted by physicians concerning the severity of Mr. Sasnette's pain. (Tr. 17). The court addresses the factors in the order the ALJ addressed them in her opinion.

A.   **Receipt of Unemployment Benefits Was Properly Considered by The ALJ in Discrediting Mr. Sasnette's Subjective Testimony**

The ALJ stated that Mr. Sasnette's application for and receipt of unemployment compensation was a factor weighing against the credibility of his testimony. (Tr. 14). The ALJ found:

> Application for and receipt of unemployment compensation benefits in the State of Alabama are inconsistent with a claimant's alleged disability. Alabama law specifically precludes eligibility for such benefits where the claimant is unemployed due to sickness or disability (Section 25-4-78, Code of Alabama of 1975 as amended). Further, to be eligible for such benefits, the claimant must be "... physically and mentally able to perform work of a character which he is qualified to perform by past experience or training, and he is available for such work..." (Section 25-4-77, Code of Alabama of 1975 as amended).

(Tr. 13). However, as the ALJ correctly stated, "there is no basis under the Social

12

Security Administration regulations for denial of disability benefits merely because the claimant has received unemployment compensation." (Tr. 13-14). It is generally accepted that ALJs "may consider receipt of unemployment benefits as a factor when determining a Plaintiff's credibility." *Lampley v. Colvin*, No. 2:13-CV-00850-WC, 2014 WL 5419330, at *5 (M.D. Ala. Oct. 23, 2014); *see also Turner v. Colvin*, No. 5:12-CV-2648-LSC, 2013 WL 5574920, at *4 (N.D. Ala. Oct. 10, 2013) ("The ALJ's conclusion that the receipt of unemployment benefits is a factor undermining Plaintiff's credibility is consistent with the Cristaudo memorandum and the great weight of legal authority."); *George v. Astrue*, No. 2:11-CV-03518-CLS, 2012 WL 3030157, at *1-*5 (N.D. Ala. July 20, 2012) (holding that the ALJ properly considered the claimant's receipt of unemployment benefits as a factor weighing against the claimant's credibility).

The undersigned has previously addressed the impact of unemployment compensation on disability claims in *Readus v. Astrue*, No. 5:08-CV-1675-VEH, (Doc. 16) (N.D. Ala. Mar. 10, 2010). In *Readus*, the court held that the claimant's receipt of state unemployment benefits was "irreconcilable with [claimant]'s claim that she stopped working due to back pain . . . ." *Id.* at 21. In addition to the receipt of unemployment benefits, the court also noted several inconsistencies concerning the claimant's allegation of pain and her daily activities. *Id.* at 20. The combination of the

two observations led the court to conclude that substantial evidence supported the ALJ's negative credibility finding. *Id.*

A few months after the court decided *Readus*, a memorandum ("Memo") was circulated to every ALJ with instructions on how to treat unemployment compensation under the Social Security Act. The Memo provides support for the court's handling of the issue in *Readus* and guidance in the instant case.

In the Memo, written by Chief Administrative Law Judge Frank A. Cristaudo, receipt of unemployment benefits is one of many factors that must be considered in determining whether the claimant is disabled. Memorandum from Frank A. Cristaudo, Chief Administrative Law Judge, to all Administrative Law judges (Aug. 9, 2010), http://www.socialsecurityinsider.com/wp-content/uploads/20100809-SS A-memo-unemployment-insurance-ui-soical-security.pdf. The Social Security Administration ("SSA") adopted the position that "individuals need not choose between applying for unemployment insurance and Social Security disability benefits. However, application for unemployment benefits is evidence that the ALJ must consider with all of the medical and other evidence." *Id.* The Memo indicated an ALJ should take into account whether the claimant sought employment at jobs with physical demands in excess of his stated limitations during his period of disability. *Id.* Finally, ALJs are reminded in the Memo to follow the principles discussed in SSR

14

00-1c.[7] *Id.*

While the Eleventh Circuit has not addressed the effect of unemployment benefits on disability applications in a published decision, the Memo's guidance is consistent with this court's handling of the issue in *Readus*. Further, the Seventh and Ninth Circuits have both held, in published decisions, that receipt of unemployment compensation is a relevant factor. *See Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005) ("[W]e are not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely <u>no</u> role in assessing his subjective complaints of disability.") (emphasis in original); *Carmickle v. Commissioner, Social Security Administration*, 533 F.3d 1155, 1161–62 (9th Cir. 2008) (acknowledging that "receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime").

One of the first cases to address the Memo's effect on disability claims was

---

[7]SSR 00-1c incorporates the decision reached in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999).In *Cleveland*, 526 U.S. at 797, the Supreme Court held that a plaintiff receiving Social Security Disability payments was not necessarily barred from also pursuing an action for disability discrimination under the Americans with Disabilities  Act of 1990 ("ADA"), in which she would have to establish that she could perform the "essential functions of her job" with "reasonable accommodation." The Court emphasized, however, that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim." *Id.* at 806. The plaintiff can proceed on both theories, but only if she can "proffer a sufficient explanation." *Id.*

*George v. Astrue*, *supra* at 13. In *George*, the claimant asserted that the ALJ improperly considered his receipt of unemployment benefits and, based upon the *Cleveland* decision, should have been given a further opportunity to reasonably explain the inconsistent representations made to the unemployment compensation board and to the Commissioner.[8] *Id.* at *1, *3. The Honorable C. Lynwood Smith held:

> The ALJ in this properly applied these principles in evaluating claimant's credibility. It is clear that the ALJ did not rely solely on claimant's unemployment compensation application in evaluating claimant's credibility; instead, the application was only one factor in the ALJ's analysis. While this court is not convinced, as the ALJ suggested, that a claimant is obligated to explain the inconsistency in the same manner that the *Cleveland* decision requires an ADA plaintiff to explain inconsistencies, the court also sees no reason why the ALJ could not consider any explanation, or lack thereof, in making a credibility determination.
>
> This court understands that claimant may have had valid, even compelling, personal reasons for applying for unemployment compensation and Social Security disability benefits at the same time. But the ALJ nonetheless was entitled to consider the inconsistencies in claimant's representations to various agencies in evaluating claimant's credibility . . . . In summary, the ALJ's consideration of claimant's application for and receipt of unemployment compensation benefits was in accordance with controlling law and supported by substantial evidence.

---

[8]The claimant did testify at his hearing that he sought unemployment benefits because of his family financial situation, and he acknowledged that when he applied for unemployment benefits he had to certify to the State that he was able to work and was looking for work. *George*, 2012 WL 3030157, at *1-*2.

*Id.* at *5. Judge Smith's treatment of unemployment compensation in *George* is consistent with the undersigned's holding in *Readus*; specifically, that receipt of unemployment benefits, in addition to other evidence in the record, can serve as substantial evidence for an ALJ's negative credibility finding. *See Readus*, No. 5:08-CV-1675-VEH, (Doc. 16 at 20-21).

Mr. Sasnette began receiving unemployment benefits shortly after his last day of work on January 14, 2011. (Tr. 13). Mr. Sasnette was receiving unemployment compensation at the time of his hearing in front of the ALJ, and he continued to receive unemployment compensation until about the second week of October 2012. *Id.* Mr. Sasnette testified that he had looked for work during the same time period in which he claimed he was disabled. (Tr. 30). Actively looking for work, along with the Alabama unemployment compensation requirement that he be able and available for work, represent significant inconsistencies with his present claim of disability, and the ALJ was entitled to consider this evidence when assessing Mr. Sasnette's credibility. Thus, persuaded by pre-Memo *Readus* and post-Memo *George*, an ALJ may adequately discredit a claimant's subjective allegations of pain <u>if unemployment compensation is not the only reason supporting the ALJ's negative credibility finding</u>. As explained more fully in the next section of the court's analysis, in this case the ALJ did <u>not</u> adequately explain any other factor for discrediting Mr. Sasnette's

17

subjective allegations of pain. Therefore, the ALJ's finding on credibility is not supported by substantial evidence.

### B.   Inconsistencies Noted by Physicians Concerning Severity of Pain Support Negative Credibility Finding

After discussing Mr. Sasnette's unemployment compensation, the ALJ next identified inconsistencies noted by physicians and therapists as an additional reason for not fully crediting his subjective testimony. (Tr. 17). More specifically, the ALJ found that, "given the claimant's diagnoses, his physicians' observations and his description of his daily activities and his functional abilities, that his pain is no more than moderate with medication." (Tr. 17-18). From this determination, the ALJ found that "[Mr. Sasnette] may reasonably be expected to have some level of limitation due to his musculoskeletal impairments, but the evidence does not show that he has any limitations inconsistent with sedentary work, limited as discussed above."[9] (Tr. 18). The ALJ then stated that Mr. Sasnette's subjective testimony "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." *Id.*

Mr. Sasnette argues that this is a "woefully inadequate" attempt to discredit Mr. Sasnette's subjective testimony. (Doc. 11 at 8). He argues that the ALJ failed to

---

[9]This finding corresponds to the ALJ's determination that Mr. Sasnette has the RFC to perform sedentary work. (Tr. 14).

"specifically delineate as to what observations or daily activities she is referencing to support her decision." *Id.* The court does not completely agree with Mr. Sasnette's argument. The ALJ did cite two reports in support of her determination; however, the court finds that the two reports relied upon by the ALJ do not provide substantial evidence for her credibility determination.

If the ALJ rejects the allegations of pain, "he must articulate explicit and adequate reasons" for doing so. *Foote*, *supra* at 5. The ALJ may not "simply recite the factors that are described in the regulations for evaluating symptoms." SSR 96-7p. The reasoning "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The first document identified by the ALJ was a report generated by a treating physician of Mr. Sasnette, Dr. Bramlett. (Tr. 18). The second report relied upon was the physical RFC assessment produced by a non-examining state agent medical consultant, Dr. Heilpern. *Id.* The court finds that the ALJ's reliance on both reports was improper under the circumstances of this case.

On September 1, 2010, Mr. Sasnette underwent a total right knee joint replacement procedure performed by orthopedic surgeon, Kenneth W. Bramlett, M.D. (Tr. 238-39). Mr. Sasnette twice returned to visit Dr. Bramlett for post-operational examination. (Tr. 234-36). On his last visit, dated October 28, 2010, Dr. Bramlett

noted the following: "[o]n exam [Mr. Sasnette] has full extension and easy flexion to 120. He is stable and can walk and stand. He is back to work. He is routinely doing what he needs to do. He is back to 95% of normal roughly . . . . He is in good shape." (Tr. 234). Dr. Bramlett's treatment plan for Mr. Sasnette's knee included allowing Mr. Sasnette to ride his bike, exercise continually, and generally be comfortable. *Id.* The ALJ cited to this language as evidence showing what physical activities Mr. Sasnette is capable of performing. (Tr. 18).

The ALJ's reliance on Dr. Bramlett's examination notes cannot constitute good cause for her partial negative credibility finding for multiple reasons. First, Dr. Bramlett's examination provides an incomplete picture of Mr. Sasnette's impairments; second, Dr. Bramlett does not appear to be making a statement about Mr. Sasnette's physical capabilities; and lastly, Dr. Bramlett's report was written approximately three months before Mr. Sasnette's claimed disability onset date.

The ALJ erred by relying upon Dr. Bramlett's examination notes in order to make a general determination about Mr. Sasnette's physical capabilities because the notes only concern Mr. Sasnette's surgically replaced right knee. Dr. Bramlett does not make any observation regarding Mr. Sasnette's back impairments, which is the primary source behind his stated limitations. Furthermore, it does not appear that Dr. Bramlett examined Mr. Sasnette's left knee on this day. This is also significant,

20

considering that Mr. Sasnette testified that his left knee also needs replacing. (Tr. 31). Mr. Sasnette's testimony is supported by a August 7, 2012, examination in which it is noted that Mr. Sasnette's left knee "is a legit case of deformity." (Tr. 519). X-rays showed severe degenerative joint disease changes medially and at the patellofemoral joint in the left knee. *Id.* Thus, because of the narrow scope of Dr. Bramlett's examination notes, the ALJ should not have relied upon them to only partially credit his credibility.

The second flaw related to the ALJ's reliance on Dr. Bramlett's examination notes is her mischaracterization of them as being an affirmative statement about Mr. Sasnette's ability to perform physical activities. Because of the limited scope of the notes, as mentioned above, it is impossible to decipher whether Dr. Bramlett's statements, specifically that Mr. Sasnette "is routinely doing what he needs to do[,] he is back to 95% of normal roughly . . . [,] he is in good shape[,]" refers to Mr. Sasnette's condition generally, or merely the condition of his surgically replaced right knee. (Tr. 234). Considering the context, a reasonable interpretation of those statements is that they are limited to the condition of Mr. Sasnette's right knee. Furthermore, Dr. Bramlett's treatment plan, which stated that Mr. Sasnette "can ride his bike, exercise continually[,]" cannot be relied upon as evidence to discredit Mr. Sasnette for the same reasoning stated above.

Lastly, even if the court were to assume that Dr. Bramlett was speaking about Mr. Sasnette's general condition, the ALJ's reliance would still be improper, considering the date of the examination notes. The examination took place approximately three months prior to Mr. Sasnette's claimed disability onset date. The ALJ's reliance on this evidence, particularly Dr. Bramlett's statement that Mr. Sasnette is "back to work[,] [and] is routinely doing what he needs to do[,]" to discredit Mr. Sasnette is problematic and inadequate, especially when Mr. Sasnette does not contend he was incapable of work during this time. (Tr. 18). Alternatively, while the ALJ may have been entitled to use the evidence to discredit the level of any limitations caused by his right knee, the ALJ relies on this report in an effort to discredit the impact of all of Mr. Sasnette's subjective limitations in combination. Therefore, for all these reasons, Dr. Bramlett's examination notes do not serve as substantial evidence supporting the ALJ's credibility determination.

The second piece of evidence the ALJ relies upon for her credibility determination is the report produced by state agency medical consultant, Dr. Heilpern. (Tr. 18). Dr. Heilpern determined that Mr. Sasnette could perform the requirements of light work. The ALJ stated that she accorded "significant weight" in assessing Mr. Sasnette's RFC. *Id.* For reasons that will be developed below, the court finds that Dr. Heilpern's report does not serve as substantial evidence for the ALJ's credibility

determination.

Evidence that can be considered by ALJs when assessing a claimant's RFC includes "any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations." 20 C.F.R. § 404.1545(a)(3). Also, any "descriptions and observations of your limitations from impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons" will be considered. *Id.* If inconsistencies arise between the medical opinions and the other relevant evidence, the ALJ must "weigh all of the evidence and see whether [the ALJ] can decide whether [the claimant] [is] disabled based on the evidence . . . ." 20 C.F.R. § 404.1527(c)(2). "[The claimant's] symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

Nevertheless, as mentioned earlier, the ALJ may not reject the claimant's statements as to the intensity and persistence "solely because the available objective medical evidence does not substantiate [claimant's] statements." 20 C.F.R. § 404.1529(c)(2). It is plain from Dr. Heilpern's report that he formulated his RFC

assessment of Mr. Sasnette solely from objective medical evidence. While Dr. Heilpern mentions Mr. Sasnette's alleged limitations, any stated limitations that were inconsistent with his RFC determination were discredited. (Tr. 381). The report does not suggest that Mr. Sasnette lied about his daily activities, made any inconsistent statements regarding his pain to physicians, or mention anything in general that would contradict Mr. Sasnette's subjective complaints.

Therefore, as a result of the court's prior finding that Dr. Bramlett's report is not substantial evidence supporting the ALJ's credibility determination, Dr. Heilpern's report is the only evidence remaining cited by the ALJ as support for her determination that Mr. Sasnette's pain is no more than moderate with medication. In accordance with the Regulations, this determination by the ALJ cannot be affirmed since it is based solely upon the fact that objective medical evidence does not substantiate Mr. Sasnette's statements.[10]

The reports from Dr. Bramlett and Dr. Heilpern were the only two pieces of additional evidence mentioned in support of the ALJ's statement that, "given [Mr. Sasnette]'s diagnoses, his physicians' observations and his description of his daily

---

[10]Alternatively, Dr. Heilpern's report cannot serve as substantial support for the ALJ's determination that Mr. Sasnette's pain is no more than moderate with medication, because Eleventh Circuit precedent precludes non-examining physician reports from acting as the sole support for any administrative finding. *See Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) ("[R]eports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision.") (emphasis added).

activities and his functional abilities, that his pain is no more than moderate with medication." (Tr. 17-18). While the undersigned has come across evidence in the record that would appear to support the ALJ's finding, the ALJ failed to mention such evidence in her decision, and the court declines to speculate what other evidence, if any, the ALJ considered. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence."); *see also Richardson v. Perales*, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L. Ed. 2d 239 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Therefore, for the reasons discussed above, the ALJ's credibility determination is not supported by substantial evidence because she failed to articulate another adequate reason to discredit Mr. Sasnette in combination with the unemployment compensation factor. This appeal is due to be remanded for this independent reason. *See Williams v. Astrue*, No. 5:07-CV-1914-VEH, (Doc. 14 at 19) (N.D. Ala. Aug. 5, 2008) (holding that the ALJ's failure to adequately discredit the claimant was an independent reason for remanding); *Hollis v. Astrue*, No. 4:07-CV-2061-VEH, (Doc. 12 at 21) (N.D. Ala. Oct. 24, 2008) (similar holding).

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly, the decision of the Commissioner is reversed and the case remanded.

**DONE** and **ORDERED** this the 21st day of July, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

26